UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RAVSHAN NURITDINOV,<br>    Plaintiff, | Case No. 1:22-cv-443<br>Hopkins, J.<br>Litkovitz, M.J. |
| vs. | |
| MEDA-CARE TRANSPORTATION, INC.,<br>    Defendant. | ORDER AND REPORT AND RECOMMENDATION |

Pro se plaintiff Ravshan Nuritdinov brings this action alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C § 621 *et seq.*, against defendant Meda-Care Transportation, Inc. This matter is before the Court on defendant's motion to dismiss (Doc. 6), plaintiff's response (Doc. 8),[1] and defendant's reply (Doc. 11). Plaintiff has also filed a "Motion to Add One More Information to the Complaint" (Doc. 10); a "Motion to Grant Court Hearing and Oral Argument" (Doc. 14), to which defendant responded (Doc. 16); and a second "Motion to Grant Court Hearing and Oral Argument" (Doc. 17).

**I.    Complaint**

Plaintiff's complaint describes his tenure as an employee of defendant—particularly during the Covid-19 pandemic when that employer-employee relationship deteriorated. (*See generally*, Doc. 3). The complaint, liberally construed, alleges the following facts. Plaintiff is a 65-year-old[2] man who worked as a driver for defendant from April of 2012 to August 15, 2021. (*See id.* at PAGEID 49).[3] Plaintiff's initial salary was $10 per hour and his final salary was

---

[1] This filing is styled as a "Motion to Dismiss Defendant's Complaint and Set Up a Court Hearing." To the extent this document contemplates two filing events, it is docketed a second time at document number nine to capture both the response to defendant's motion and the request for a hearing.
[2] Plaintiff's complaint is inconsistent with respect to his age. (*Compare* Doc. 3 at PAGEID 49 (65) *with* PAGEID 44 (66)).
[3] Plaintiff may have worked for defendant since 2011. (*See id.* at PAGEID 50 ("Within 10 years of work, my hourly rate . . . went from $10 in 2011 to $13 in April 2021)).

$13.50 per hour. (*See id.* at PAGEID 44, 49-51, 53, 56). Plaintiff frequently worked in excess of 12 hours per day but only earned overtime for hours worked in excess of 80 per two-week period. (*See id.* at PAGEID 53, 56). Prior to the start of the Covid-19 pandemic, defendant paid plaintiff "doubletime" for working between the hours of 4:00 a.m. and 7:00 a.m. (*See id.* at PAGEID 54, 56, 59).

When the Covid-19 pandemic began in early 2020, defendant reduced plaintiff's hours[4] and his income dropped accordingly—by approximately 25% during nine months in 2020. (*See id.* at PAGEID 44-47, 50, 54, 57). Plaintiff also stopped receiving "doubletime" for early morning hours. (*See id.* at PAGEID 54, 56, 59). Sometime after April of 2021, plaintiff learned that defendant was paying newly hired and inexperienced drivers $14.00 per hour. (*See id.* at PAGEID 44-46, 49-51, 53-54). Also around this time, defendant received some amount over $1,700,000.00 from the Small Business Association's (SBA's) Paycheck Protection Program (PPP) to help employers whose employees lost wages due to the pandemic. (*See id.* at PAGEID 44, 47, 49-51, 54, 57-58).

Plaintiff did not receive the benefit of these PPP funds, and he ultimately had to withdraw funds from his individual retirement account (IRA) to meet his and his family's living expenses due to his lower wages. (*See id.* at PAGEID 44, 47, 49-51, 54, 57).[5] During his tenure with defendant, plaintiff made multiple unsuccessful requests for a raise to $14.00 per hour and requested $15.00 per hour after he learned of the $14.00 per hour rate offered to new, younger hires. (*See id.* at PAGEID 44-46, 50-51, 53-54, 56, 59).

---

[4] Though plaintiff sometimes refers to working "extended hours" during the Covid-19 pandemic, the Court believes that plaintiff refers to extended hours on a given day as opposed to overall bi-weekly hours. (*See id.* at PAGEID 48).
[5] Plaintiff initially states that no employees received PPP funds (*id.* at PAGEID 44) but later alleges that some employees received PPP funds (*see, e.g.*, *id.* at PAGEID 49).

Sometime after August of 2021, plaintiff told defendant's CEO, Rad Galitsky, that he would not return to work unless he was paid $15.00 per hour. (*See id.* at PAGEID 50, 54-55, 59-60). Mr. Galitsky only offered $14.00 per hour, which plaintiff refused. (*See id.* at PAGEID 44, 46, 53-54, 59-60). For six to seven weeks, plaintiff did not come to work but continued to communicate with defendant regarding his request for a pay increase and assistance via PPP funds. (*See id.* at PAGEID 46, 55, 59-60). Eventually, an employee of defendant asked that plaintiff return his employment-related car, cell, phone, and tablet. (*See id.* at PAGEID 46, 55, 58, 60). Plaintiff alleges that he did not quit but was let go; it is not entirely clear when this occurred. (*See id.* at 48-49, 51, 58). Plaintiff alleges that he was let go in retaliation for a complaint he made to the SBA about defendant's misuse of PPP funds. (*See id.* at PAGEID 48). Plaintiff alleges that he has suffered significant financial damages as a result of defendant's conduct. (*See id.* at PAGEID 46, 51, 55, 60). Plaintiff has had difficulty finding other employment because he does not speak English. (*See id.* at PAGEID 46, 55, 57, 60).

Plaintiff states that around approximately November 1, 2021,[6] he "called EEOC and filed unemployment compensation claim because of age discrimination" and "also filed a complaint with [Ohio Department of Job and Family Services (ODJFS)][7] with Age Discrimination. . . ." (*Id.* at PAGEID 47). (*See also id.* at PAGEID 43 ("I called to EEOC with complaint, but I never got a response for them. They were [i]naccessible during the COVID.")). Only after this did defendant began to offer older employees a raise to $14.50 per hour but did not offer the same to

---

[6] In fact, plaintiff alleges that this occurred "[a]pproximately 9 months ago," which the Court infers should be calculated from the August 1, 2022 filing of his complaint. (*Id.* at PAGEID 47).
[7] The Ohio civil rights commission, not ODJFS, handles charges of discrimination. *See* Ohio Rev. Code §§ 4112.03-4112.04; *see also* § 4112.05(B)(1) ("Any person may file a charge with the commission alleging that another person has engaged or is engaging in an unlawful discriminatory practice.").

plaintiff. (*See id.* at PAGEID 47-48). Plaintiff states that defendant contested his unemployment claim in retaliation for filing a discrimination complaint. (*See id.* at PAGEID 47).

**II.     Legal standard**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Sixth Circuit has also recognized, however, that this liberal construction does not come at the expense of "abrogat[ing] basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

**III.    Analysis**

4

A. Defendant's motion (Doc. 6)

Defendant makes three arguments in support of its motion to dismiss. First, defendant argues that plaintiff failed to allege that he exhausted his administrative remedies with the EEOC prior to filing his federal case. Second, defendant argues that plaintiff has failed to allege that he suffered an adverse employment action because he alleges that he left his position willfully and refused offers to return with a $14.00 per hour rate of pay. Finally, defendant contends that plaintiff has failed to allege that he was treated less favorably than similarly situated non-protected employees.[8]

In response, plaintiff largely reiterates the allegations of his complaint. Critically, however, he admits that he did no more than file an inquiry with the EEOC. (Doc. 8 at PAGEID 86 ("[I]t was not a real application but an inquiry. . . .")). (*See also id.* at PAGEID 89 ("I have not exhausted my administrative remedies" because of "a lack of experience in legal matters and my attorney playing my time. . . .")).

Exhaustion of administrative remedies is a precondition to filing an ADEA lawsuit. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400 (6th Cir. 2008). "No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful

---

[8] Defendant also raises an insufficient service of process defense in a footnote. (*See* Doc. 6 at PAGEID 79 n.3). *See* Fed. R. Civ. P. 12(b)(5). Generally, a plaintiff bears "the burden of establishing [service's] validity." *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015) (quoting *Metro. Aloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006)). Courts may look to "record evidence" and "uncontroverted affidavits" in determining whether plaintiffs have met this burden. *Id.* Federal Rule of Civil Procedure 4(h), governing service on a corporation, incorporates Rule 4(e)(1) governing service on an individual, which in turn incorporates Ohio law. Under Ohio Civ. R. 4.1(A)(1)(a), service may be made by United States certified mail "[e]videnced by return receipt signed by any person. . . ." The return of summons here (Doc. 18) does not include a United States certified mail receipt with a signature but instead a United States Postal Service tracking printout showing that it was delivered to an "individual" on September 16, 2022. While Ohio Civ. R. 4.1(A) is "flexible" and "construed broadly" with respect to who accepts service, the signature requirement is strictly construed. *CUC Properties VI, LLC v. Smartlink Ventures, Inc.*, 178 N.E.3d 556, 560 (Ohio Ct. App. 2021) ("The entire purpose of certified mail service . . . is to ensure that proof exists that someone actually received the service, which explains why both subsection (1)(a) and (1)(b) *emphasize the signature requirement*.") (emphasis added). Given the perfunctory manner in which defendant raised this issue, however, the Court declines to address it at this juncture.

discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d)(1). ADEA regulations explain that for a charge to be sufficient, it must be in writing, name the prospective respondent, and generally allege the discriminatory act(s). *See* 29 C.F.R. §§ 1626.6; 1626.8(b). In *Fed. Exp. Corp. v. Holowecki*, the Supreme Court added the requirement that an EEOC filing will only be deemed a charge if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 552 U.S. 389, 402 (2008). Put differently, "an 'objective observer' must believe that the filing 'taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes[.]'" *Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011) (quoting *Holowecki*, 552 U.S. at 398, 402).

The only definitive statement in plaintiff's complaint with respect to the EEOC is that he "called" them, but they were inaccessible during the Covid-19 pandemic. (Doc. 3 at PAGEID 43-44, 47). Some of the allegations in plaintiff's complaint make vague reference to a discrimination complaint (*see id.* at PAGEID 47-48), but given the opportunity to clarify in his response to defendant's motion to dismiss, plaintiff confirmed that he did not actually exhaust his administrative remedies. (*See* Doc. 8 at PAGEID 86, 89). Plaintiff explains:

> I called the EEOC, and the EEOC suggested to go to their website and fill out the online application. I fill out the EEOC online form by thinking that it was application and was waiting for their response, but it turned out that it was not a real application but an inquiry, which EEOC should consider first before registering case and issuing case number. It was hard to find online appointment with the Office. Because EEOC was not responding I found an attorney at Gibson Law located at 9200 Montgomery Road Suite #11A, Cincinnati, OH 45242, and I waited almost 3 months just to get his refusal to continue my case. After that I went 3 times to the main EEOC at 505 Main Street, but they always were closed. During the Pandemic the regular administrative remedies were not working, so going to the Court was my last resort. So, I did not fail to state a

6

> claim. I tried, but the absence of experience, the Pandemic and the attorney, who failed me, made me look if I failed.

(Doc. 8 at PAGEID 86).

The Court finds that plaintiff's complaint should be dismissed because he did not first file a charge with the EEOC. *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an [Americans with Disabilities Act (ADA)] or ADEA action."). Though not binding authority, the Court finds the following recent, similar cases persuasive authority in support of this conclusion.

In *Uchikura v. Willis Towers Watson Call Ctr.*, the pro se plaintiff brought a discrimination action under the Americans with Disabilities Act (ADA) against his employer. No. 22-cv-00002, 2022 WL 17552449, at *1 (D. Ariz. Dec. 9, 2022). The plaintiff alleged that he completed an intake interview with the EEOC within the statutory timeframe for filing a charge, but "the EEOC provided 'misleading and incomprehensible instructions . . . on the next steps of his charge' and 'lost [his] case . . . due to COVID-19, resulting in the 300 days statue[ ] of limitations [being] exceeded.'"[9] *Id.* at *4 (quoting the plaintiff's complaint). The defendants moved to dismiss the ADA claim on the basis of the plaintiff's failure to exhaust administrative remedies. *Id.* at *6.

The *Uchikura* court acknowledged that an EEOC charge need not be formal and could be satisfied by an "intake questionnaire. . . ." *Id.* at *8 (discussing *Holowecki*, 552 U.S. 389). The court, however, found that the circumstances before it did not satisfy the definition of a "charge"

---

[9] Like Arizona, Ohio is a "deferral state" under the ADEA, meaning that a plaintiff cannot bring a federal lawsuit without first commencing proceedings under state anti-discrimination law. *See Flint v. Mercy Health Partners of Sw. Ohio*, 940 F. Supp. 2d 743, 747 (S.D. Ohio 2013) (citing 29 U.S.C. § 633(b)). In "deferral state" cases, an EEOC charge must be filed "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, which ever is earlier." 29 U.S.C. § 626(d)(1)(B).

7

for two reasons: (1) the plaintiff did not allege that he submitted a "filing or written statement" to the EEOC, and (2) the plaintiff's complaint failed "to allege facts from which the Court [could] infer that [the plaintiff] requested that the EEOC take remedial action. . . ." *Id.* at *9 & n.15.

The *Uchikura* court next considered whether the plaintiff's allegations that he was misled by the EEOC or otherwise prevented from timely filing his charge provided a basis to equitably toll the statute of limitations. *Id.* at *10. The court concluded that the plaintiff's complaint simply failed to allege any *facts* to suggest that the EEOC misled him or that the Covid-19 pandemic *actually caused* his inability to file his EEOC charge. *Id.* at *10-11. The plaintiff's conclusory allegations regarding misinformation from the EEOC and generalized difficulties in pursuing his rights due to Covid-19 did not prevent the court from granting the defendant's Rule 12(b)(6) motion over the plaintiff's arguments that the administrative exhaustion deadline under the statute should be equitably tolled.

In *Hicks v. Acell Inc.*, the plaintiff alleged that she was fired in violation of the ADA. No. 4:21-cv-30, 2022 WL 2713651, at *1 (N.D. Ind. July 13, 2022). The defendants moved to dismiss on the basis of exhaustion, and the court converted the motion into a motion for summary judgment and gave the plaintiff additional time to address the exhaustion issue.[10] *Id.* The parties did not dispute that the plaintiff never filed a charge of discrimination with the

---

[10] In a prior decision, the *Hicks* court explained this conversion:

> The failure to file a timely charge with the EEOC is an affirmative defense, and the plaintiff is not required to plead that she has met the requirement. *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 921 (7th Cir. 2007), citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Neither of Hicks' complaints made any reference to a filing with the EEOC. In response to the pending motion to dismiss, Hicks addressed only an alternative argument concerning whether defendant Integra is a proper or necessary party. . . . Hicks offered no response to the principal dispositive argument concerning EEO exhaustion of her ADA claim.

*Hicks v. ACell Inc.*, No. 4:21-cv-30, 2021 WL 5447068, at *2 (N.D. Ind. Nov. 22, 2021), *vacated for consideration of additional evidence regarding exhaustion*, 2021 WL 9968911 (N.D. Ind. Dec. 7, 2021). Here, by contrast, plaintiff makes reference to administrative remedies in his complaint and concedes the issue in his response to defendant's motion to dismiss.

EEOC. *Id.* at *2. Because she was proceeding pro se, however, the Court considered *sua sponte* whether an "Inquiry Information Questionnaire" that the plaintiff submitted to the EEOC sufficed as a "charge" under *Holowecki*. *Id.* Like in *Uchikura*, the court found that the questionnaire "conain[ed] no language at all that could be construed as a request for the EEOC to take remedial action"—noting that the Seventh Circuit "repeatedly emphasized" this as a "necessary element" to finding that such a document suffices as a "charge" after *Holowecki*. *Id.* at *3.

The *Hicks* court also discussed equitable tolling *sua sponte*, considering whether the pro se plaintiff should have been excused from the exhaustion requirement because the EEOC was not responsive during the Covid-19 pandemic or because of her attorney's malpractice. *Id.* at *4. The court found that the Covid-19 excuse was undercut by the plaintiff's own representations in her state court malpractice case suggesting that Covid-19 *did not* inhibit the filing of EEOC charges. *Id.* The court found the latter excuse unavailing because Seventh Circuit authority made clear that attorney negligence does not excuse the administrative exhaustion requirement. *Id.*

Plaintiff concedes that he has not filed a charge with the EEOC. Even if the Court were to liberally construe his complaint and infer that vague references to a discrimination complaint refer to his later-identified "inquiry" to the EEOC (Doc. 8 at PAGEID 86), *Uchikura* and *Hicks* support the conclusion that this "inquiry" should not be deemed a "charge" under *Holowecki* because there is no indication that this "inquiry" included an objectively clear request that the EEOC take remedial action. *See Holowecki*, 552 U.S. at 402; *Williams*, 643 F.3d at 509.

This leaves the question of equitable tolling—invoked by plaintiff's allegation that EEOC "w[as] [i]naccessible during the COVID." (Doc. 3 at PAGEID 43). Like in *Uchikura*, the Court

9

finds that plaintiff's vague allegation that the EEOC office was generally inaccessible during the Covid-19 pandemic is insufficiently detailed to support the application of equitable tolling.[11] *See Gordon v. England*, 354 F. App'x 975, 981 (6th Cir. 2009) ("Absent specific allegations in the complaint that would give rise to a claim for equitable tolling, the district court did not necessarily err in dismissing Gordon's initial complaint."). Nevertheless, in *Gordon*, the Sixth Circuit reversed the case's dismissal so that the plaintiff could file an amended complaint under the circumstances that (1) the plaintiff was pro se; (2) her prior attorney had committed "egregious" misconduct; and (3) her discrimination, retaliation, and sexual harassment allegations were "serious." *Id.* at 981. The *Gordon* court did so even though the pro se plaintiff had not requested leave to amend her complaint. *Id.* Although the *Uchikura* court granted the defendant's motion to dismiss, it also granted the plaintiff the opportunity to amend his complaint—even though it acknowledged that an amendment was likely futile. *Id.* at *14.[12]

In plaintiff's response to the pending motion to dismiss, he presents circumstances relevant to the equitable tolling analysis and asks that the Court "give [him] a chance to mediate [his] losses." (Doc. 8 at PAGEID 89). The Court finds that this response, coupled with plaintiff's pro se status, his language barrier, and the Court's preference for deciding cases on their merits warrant granting plaintiff an opportunity to amend his complaint to address the deficiencies noted herein. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796

---

[11] The Sixth Circuit considers the following factors in the application of equitable tolling: "(1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 494 (6th Cir. 2018) (quoting *Truitt v. Cnty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Equitable tolling is to be "sparingly bestowed" under only "compelling equitable considerations." *Id.* at 493 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000), and *King v. Henderson*, 230 F.3d 1358, 2000 WL 1478360, at *5 (6th Cir. 2000) (per curiam) (unpublished table decision), respectively).
[12] In *Uchikura*, the plaintiff explicitly "offere[d] to submit an amended complaint" in his response to the defendant's motion to dismiss. 2002 WL 17552449, at *5.

F.2d 190, 193 (6th Cir. 1986) (federal courts have a strong preference for deciding cases on their merit). In particular, plaintiff must allege in any such amended complaint whether he stated an EEOC charge that (1) was in writing, (2) named the charged party, and (3) was reasonably construed by an objective observer as a request that the EEOC take remedial action. *See Holowecki*, 552 U.S. at 396, 402; *Williams*, 643 F.3d at 509. Otherwise, plaintiff must allege *specific* circumstances that might give rise to equitable tolling beyond generalized difficulties; e.g., that Covid-19 *actually caused* his failure to exhaust his administrative remedies. *See Gordon*, 354 F. App'x at 981.

Because the Court recommends dismissal of plaintiff's case based on failure to exhaust his administrative remedies, it is unnecessary to address defendant's alternative arguments in support of dismissal at this time.[13]

B. Plaintiff's motions (Docs. 9, 10, 14, 17)

The Court begins with plaintiff's requests for a hearing and oral argument. (Doc. 3 at PAGEID 46 and Docs. 9, 14, and 17). In his complaint and response to defendant's motion to dismiss, plaintiff requests the opportunity to produce evidence to support his claims. (*See* Doc. 3 at PAGEID 46; Doc. 9-1 at PAGEID 111). In the second two motions, plaintiff makes the same request and includes additional and reiterated arguments in opposition to defendant's motion to

---

[13] "[C]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (quoting *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012), *abrogated on other grounds by Fifth Third Bancorp v. Dudenoeffer*, 573 U.S. 409 (2014)). But "[t]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). Plaintiff here explicitly addressed defendant's exhaustion affirmative defense in his complaint.

dismiss. (*See* Docs. 14, 17). The Local Rules for the Southern District of Ohio address the procedure for obtaining a hearing or oral argument:

> (1) **Evidentiary Hearings.** Upon the filing of any motion that requires an evidentiary hearing under the Federal Rules of Civil Procedure or any provision of law, the movant shall obtain a date for such hearing. . . .
>
> (2) **Oral Argument.** In all other cases, if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel or a *pro se* party may apply to the Court for oral argument. . . .

S.D. Ohio Civ. R. 7.1(b).

Plaintiff fails to cite any authority demonstrating that an evidentiary hearing is warranted in this case. To the contrary, as explained above, defendant's motion turns on the application of law to the facts alleged in plaintiff's complaint. Given the Court's conclusion above, oral argument is not "essential to the fair resolution of this case. . . ." S.D. Ohio Civ. R. 7.1(b). *See Stolz v. J & B Steel Erectors, Inc.*, No. 1:14-cv-44, 2014 WL 6473413, at *1 n.1 (S.D. Ohio Nov. 18, 2014) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.") (quoting *Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 WL 2128929, at *2, (S.D. Ohio July 27, 2006)). Plaintiff's requests for a hearing or oral argument (Docs. 9, 14, and 17) are therefore denied.

In plaintiff's last outstanding motion (Doc. 10), he seeks to supplement his complaint with information relevant to his alleged damages. Because the Court recommends dismissal of plaintiff's complaint, this motion is denied as moot.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's requests for a hearing and/or oral argument (Docs. 9, 14, and 17) are **DENIED**.

2. Plaintiff's "Motion to Add One More Information to the Complaint" (Doc. 10) is **DENIED as moot**.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion (Doc. 6) be **GRANTED**.

2. Plaintiff be granted **21 days** from the entry of any Order adopting this Report and Recommendation to file an amended complaint limited to addressing the deficiencies identified in this Report and Recommendation.

3. If such amended complaint is not filed within such time, the Clerk enter judgment in favor of defendant and terminate this case.

Date: 7/18/2023

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAVSHAN NURITDINOV,　　　　　　　　　　Case No. 1:22-cv-443
　　Plaintiff,　　　　　　　　　　　　　　　　Hopkins, J.
　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　vs.

MEDA-CARE
TRANSPORTATION INC.,
　　Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).